UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| GORDON GRAVELLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-12548-LTS |
| | ) | |
| HUDSON LOCK LLC, HPC ACQUISITIONS LLC, ROBERT J. SYLVIA, MARTY JALOVE, PHIL CALIAN, WAVELAND INVESTMENTS LLC, and GALE JOHNSON, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

ORDER ON MOTION TO DISMISS (DOC. NO. 25)

January 30, 2018

SOROKIN, D.J.

*Pro se* Plaintiff Gordon Gravelle filed a complaint against above-captioned Defendants in December 2016 and first amended his complaint in February 2017. Defendants filed a Motion to Dismiss (Doc. No. 25) on June 5, 2017. On June 26, 2017, Gravelle opposed Defendants' Motion and moved for leave to file a Second Amended Complaint (the "SAC") prior to disposition of Defendants' Motion. Doc. No. 34. He attached the SAC to that motion. Doc. No. 34-1. Defendants opposed Gravelle's motion for leave to file the SAC. Doc. No. 36.[1] Subsequently, Gravelle filed an emergency motion for leave to file a reply and further amendments to his complaint. Doc. No. 37. The Court ALLOWS Gravelle's motion for leave to

---

[1] Gravelle explains in his motion that the SAC cures most or all of the deficiencies alleged in Defendants' Motion to Dismiss and that it incorporates new counts. Defendants counter that the SAC simply borrows claim element descriptions from their Motion to Dismiss and adds "layers of fact-devoid conclusions." Doc. No. 36.

1

file the SAC (Doc. No. 34) and deems the SAC to be the filed, operative complaint in this case.[2] However, Gravelle's motion to amend the complaint a third time (Doc. No. 37) is DENIED, though his request to file a reply is ALLOWED.

For the reasons that follow, the Court DISMISSES all of Gravelle's claims except for Count XII (breach of Release). Accordingly, Defendants' Motion to Dismiss (Doc. No. 25) is ALLOWED in part and DENIED in part.

I. BACKGROUND

Gravelle is a resident of Ontario, Canada and a designer and manufacturer of electronic key cutting machines. Hudson Lock, LLC ("Hudson") makes and sells custom and specialty locks and locking systems. HPC Acquisitions, LLC ("HPC") is a wholly-owned subsidiary of Hudson. Waveland Investments, LLC ("Waveland") is a private equity firm with controlling ownership of Hudson. Phil Calian, an Operating Partner at Waveland, oversaw the management and operations of Hudson and HPC. Doc. No. 34-1 ¶ 35.4.

On October 1, 2014, Hudson entered into a Purchase Order with Gravelle for the production and assembly of 100 of Gravelle's Rapidkey 7000 machines over the following six months. Hudson began marketing and accepting pre-orders for the Rapidkey 7000 machines in November 2014. Id. ¶¶ 21-24. In December 2014, Robert Sylvia, Hudson's President and General Manager, informed Gravelle by email that Hudson expected to sell 1,000 Rapidkey 7000 machines in each subsequent year. Id. ¶¶ 11 and 25. Marty Jalove, Hudson's manager of research development, also discussed Hudson's sales projections with Gravelle. Id. ¶¶ 12, 26.

---

[2] The Court acknowledges Defendants' request that the Court allow Defendants to file an updated motion to dismiss. Doc. No. 36 at 3. However, the Court considers further briefing from Defendants unnecessary and therefore evaluates all arguments in Defendants' Motion as applied to the claims in the SAC.

2

For reasons disputed by the parties, production of the machines needed to fill the pre-orders was delayed. Gravelle claims that Hudson failed to order and timely deliver machine parts required to complete production of those machines. Id. ¶ 31; Doc. No. 36-3. On February 27, 2015, Gravelle emailed a cease and desist letter to Hudson and certain of its clients warning against infringement of his claimed intellectual property rights. Sylvia emailed a reply the next day that copied those clients, sought to clarify Hudson's rights under the Purchase Order, and urged that Gordon "take a deep breath, assume responsibility for [his] breaches of [the Purchase Order], and spend [his] time trying to resolve the issues[.]" Id.

On April 23, 2015, HPC and Gravelle entered into an Asset Purchase Agreement (the "APA"), pursuant to which HPC acquired intellectual property rights for certain key making technology owned by Gravelle. Doc. No. 26-1. Also at that time, Hudson engaged Gravelle to serve as a consultant pursuant to a Consulting Agreement. Doc. No. 26-2. Calian signed these agreements on behalf of HPC and Hudson Lock as "Manager of Manager LLC."

Over the next year, Gravelle's consulting relationship with Hudson ended. On April 26, 2016, Gravelle and Hudson signed a Release Agreement (the "Release") under which Gravelle received $24,000 and certain rights to become a Hudson distributor and servicer in exchange for releasing all claims against Hudson and its subsidiaries related to events predating the Release. Doc. No. 26-3. Around this time, Gravelle began work on a new key cutting machine and approached Gale Johnson, a computer programmer who at times has worked as an independent contractor with Gravelle and Hudson, to supply custom software. Doc. 34-1 ¶ 62.1. Johnson walked away from this project in July 2016.

Gravelle now asserts fourteen claims against the Defendants in the SAC. Count I alleges breach of implied covenant of good faith and fair dealing against Hudson and HPC. In Count II,

Gravelle seeks a declaration that the Release is void and/or unconscionable and therefore unenforceable. In Count III, he requests a declaration that the Release does not shield Hudson's officers, directors, employees, agents, and managers from liability. Count IV alleges that Sylvia's reply to Gravelle's cease and desist notice was defamatory. Count V claims that Hudson, Sylvia, and Jalove fraudulently induced Gravelle to enter into the APA. Count VI asserts that Johnson breached an implied-in-fact or oral contract to provide custom software for use with a new key cutting machine. Count VII charges Sylvia and Jalove with intentional infliction of emotional distress for unspecified conduct. Counts VIII, IX, and X seek punitive damages against Hudson and HPC, Sylvia, and Jalove, respectively, for generalized wrongs. In Count XI, Gravelle claims that Hudson, HPC, and Waveland violated Mass. Gen. Laws. ch. 93A ("Chapter 93A"). Count XII alleges breach of the Release by Hudson and Waveland. Finally, Gravelle sues Hudson and Waveland for breaches of the APA and the Purchase Order in Counts XIII and XIV. Doc. No. 34-1 at 16-51.

II.     DISCUSSION

In resolving whether the SAC survives Defendants' motion to dismiss, the Court begins "by identifying and disregarding statements in the complaint that merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The Court then accepts "[n]on-conclusory factual allegations in the complaint […] as true, even if seemingly incredible," and decides whether the legal claim "has facial plausibility," i.e., whether those allegations, accepted as true, "allow[] the court to draw the reasonable inference that the [Defendants are] liable for the misconduct alleged." Id. at 12 (citations and

4

internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citation omitted).

In addition, for any legal claims for which the "core allegations effectively charge fraud," the SAC must, under Rule 9(b), "state with particularity the circumstances constituting fraud." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (footnote omitted); Fed. R. Civ. P. 9(b). This particularity requirement requires the SAC to "set[] forth specific facts that make it reasonable to believe that [Defendants] knew that a statement was materially false or misleading." Cardinale, 567 F.3d at 13 (citations and internal quotation marks omitted).

Because the SAC sufficiently refers to the APA and the Release, the Court treats these documents as forming part of the Rule 12(b)(6) record. See Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013) (supplementing facts in complaint with "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice").

A. Claims Related to the Release

As an initial matter, Defendants invoke the Release to argue that all claims in the SAC should be dismissed as against all named Defendants. Gravelle responds (i) that the Release is void and/or unenforceable and (ii) that the Release does not extend to claims against Hudson's officers, directors, employees, agents, or managers. The Court applies Massachusetts law in evaluating the validity of the Release. See In re Mi-Lor Corp., 348 F.3d 294, 301-02 (1st Cir. 2003) (looking to Massachusetts case law in diversity action to determine release's enforceability).[3]

---

[3] No party argues that the law of another jurisdiction governs the Release's validity.

5

Gravelle claims that Hudson "maliciously exploited" a "substantial inequality of bargaining power" and Gravelle's "severe economic duress" to secure an unconscionable bargain. The only evidence of coercion that Gravelle offers is that "his only other remedy [to entering into the Release] would have been to close his business of 20 years, and file for bankruptcy." Doc. No. 34-1 ¶ 44.2. However, a plaintiff asserting economic duress "must go beyond the mere showing of a reluctance to accept [and] financial embarrassment and show that acts of the other party produced these factors." Cabot Corp. v. AVX Corp., 448 Mass. 629, 638 (2007). "The assertion of duress must be proved by evidence that the duress resulted from defendant's wrongful and oppressive conduct and not by plaintiff's necessities." Id. (internal citations omitted). Gravelle claims that Defendants' "ongoing deceptive and unlawful trade practices" put him in this financial situation. Doc. No. 34-1 ¶ 44.3. This statement is conclusory and unavailing; none of the many references to deceptive and unlawful trade practices throughout the SAC alleges facts sufficient to plead duress or unconscionability with plausibility.

Gravelle also asserts that the Release is void because Hudson "wilfully [sic] and substantially breached the material terms" of the Release. Id. ¶ 46. A breach of a settlement agreement gives rise to a breach of contract claim. See Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999) ("A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges."); Ozolinis v. Forest River, Inc., 2016 WL 72175292 (D. Mass. Dec. 13, 2016) (enforcing settlement agreement and surveying cases that "demonstrate great reluctance on the part of courts to vacate a carefully negotiated settlement agreement […] where all of the material terms were agreed upon and where the party that has not fully complied with the agreement has not repudiated the agreement[.]"). Thus, while Gravelle may seek damages for a breach of the Release, he is not entitled to set aside that agreement. Thus, the

Court ALLOWS Defendants' motion to dismiss Count II (declaratory relief as to Release's invalidity).

The Release extinguishes "any and all claims or potential claims, arising either in tort or contract, whether existing or unknown, to date, save and except the terms of [the Release,]" as between Gravelle on the one hand and Hudson and subsidiaries on the other hand. Doc. No. 26-3 ¶ 5. Thus, the Release eliminates any claim that Gravelle had against persons protected under the Release as of the date of its execution. Nonetheless, the Court separately evaluates and dismisses these claims on Rule 12(b)(6) grounds below.

In Count XII, Gravelle plausibly alleges that Hudson materially breached the Release. According to Gravelle, each of the terms that Gravelle alleges Hudson breached was "a condition for a binding settlement to occur." Doc. No. 34-1 ¶ 46.1. The Release provides:

> Hudson shall advise customers in Canada who are seeking repairs to Hudson/HPC key machines (manual or electronic) of the Repair Service Center operated by Gravelle in Canada, who has access to OEM parts by Hudson/HPC. […] This agreement shall survive, and operate as a condition of, any material change of ownership, management, officers and so forth by Hudson/HPC as long as Gravelle's service center is in good standing.

Doc. No. 26-3 ¶ 3. Gravelle alleges that Hudson "fail[ed] to advise any of their customers about Gravelle operating a repair center in Canada for HPC products[.]" Doc. No. 34-1 ¶ 98. Further, the Release states:

> Hudson further permits their current contract engineer, Jordan Manary, to work directly with Gravelle on any new key machine projects being developed by Gravelle. Any and all costs associated therewith shall be borne by Gravelle. All intellectual property devised thereto by Gravelle shall remain the property of Gravelle. Hudson shall notify Manary in writing, to this effect, within 24 hours of execution of this agreement.

Doc. No. 26-3 at 2. Gravelle claims that Hudson breached this term by "allowing Mr. Manary to work with Gravelle for a very brief period of time, but only a few months later, insist[ing]

7

without cause, for Mr. Manary to refrain from doing so." Doc. No. 34-1 ¶ 100.  In light of these fact allegations, the Court DENIES Defendants' motion to dismiss Count XII as to Hudson.

Count XII also alleges that Waveland breached the Release.  Waveland is not a party to the Release, and Gravelle alleges no action by Waveland that would amount to a breach, even had Waveland been bound by the Release.  The Court therefore DISMISSES Count XII as against Waveland.

In Count III, Gravelle seeks a declaration that the Release does not extend to Hudson's officers, directors, employees, agents, or managers.  However, as explained in subsequent sections, Gravelle advances no viable claim for conduct predating the Release.  Article III of the United States Constitution limits federal court jurisdiction to actual cases and controversies.  In the declaratory judgment context, the inquiry "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).  Because no claim related to conduct predating the Release survives Defendants' Motion to Dismiss, the SAC presents no controversy "of sufficient immediacy and reality" over whether the Release protects any party other than Hudson.  The Court accordingly DISMISSES Count III for lack of jurisdiction.

The Court now examines the remaining claims under Rule 12(b) without regard to the Release.

B. Breach of Implied Covenant of Good Faith and Fair Dealing

Gravelle alleges in Count I that Hudson and HPC breached the implied covenant of good faith and fair dealing, which prohibits a party to any contract from doing "anything that will have

the effect of destroying or injuring the right of the other party to its fruits of the contract." T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 561. 569-70 (2010) (internal citation omitted). A claim for breach of this covenant requires allegations regarding the defendant's bad faith conduct. Sonoran Scanners, Inc. v. Perkinelmer, Inc., 585 F.3d 535, 541 (1st Cir. 2009). Besides "threadbare recitals of the elements" of a breach of the implied covenant, Gravelle offers only conclusory allegations of Hudson and HPC's intent to impair his business. Ocasio-Hernandez, 640 F.3d at 12. The Court accordingly ALLOWS Defendants' Motion as to Count I.

    C.    Defamation

Count IV alleges defamation against Sylvia in relation to Sylvia's reply to Gravelle's February 2015 cease and desist email. Specifically, Gravelle claims that Sylvia's characterization of Gravelle's cease and desist notice as "fraudulent" and "baseless" in light of the Purchase Order provisions that Sylvia cited was defamatory. This allegation fails to state a claim for relief, as Sylvia's statement plainly expresses Sylvia's mere opinion of Gravelle's notice based on the contract. See Riley v. Harr, 292 F.3d 282, 289 (1st Cir. 2002) ("[W]hen the speaker outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.") (internal citation omitted). The Court therefore DISMISSES Count IV.

    D.    Fraudulent Inducement

In Count V, Gravelle claims that Hudson, Sylvia, and Jalove fraudulently induced Gravelle to enter into the APA. "Intentional or fraudulent misrepresentation requires a plaintiff to prove that the defendant made a false representation of material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably

9

relied upon the representation as true and acted upon it to [its] damage." Russell v. Cooley Dickinson Hosp., Inc., 772 N.E.2d 1054, 1066 (Mass. 2002) (internal citations omitted). The particularity requirement of Rule 9(b) requires a plaintiff to allege the "who, what, where, and when of the allegedly false or fraudulent representation." Rodi v. S. New. Eng. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004).

"[S]tatements of present intention as to future conduct may be the basis for a fraud action … if the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage." Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 226 (1st Cir. 2003) (quoting McEvoy Travel Bureau Inc. v. Norton Co., 408 Mass. 704 (1990)). Further, forecasts may support a fraud action if "they are not reasonably based on, or are inconsistent with, the facts at the time the forecast is made." Glassman v. Computervision Corp., 90 F.3d 617, 627 (1st Cir. 1996). However, a plaintiff must show that the statements made "were more than tempered predictions about the future that later proved incorrect." Suna v. Bailey Corp., 107 F.3d 64, 69 (1st Cir. 1997) (citation omitted).

The SAC pleads with particularity that Defendant Sylvia represented to Gravelle, by email in December 2014, that Hudson had a viable marketing plan to sell 1,000 of Gravelle's machines per year. Nonetheless, Gravelle fails to state a plausible claim for fraudulent inducement. Beyond reciting elements of fraudulent inducement, the SAC contains no allegation that Sylvia's statement misrepresented the actual intent of Hudson at the time that it was made and no factual allegations plausibly supporting the conclusion that Sylvia made a fraudulent misrepresentation.

Moreover, Gravelle does not plausibly allege that Gravelle reasonably relied on Sylvia's statement in entering into the APA and Consulting Agreement. Hudson executed the Purchase

10

Order with Gravelle on October 1, 2014. The Purchase Order afforded Gravelle up to six months to oversee the design and production of one hundred machines. Sylvia's alleged representation occurred in December 2014. Gravelle entered into the APA with HPC and the Consulting Agreement with Hudson on April 23, 2015, after the term of the Purchase Order had expired. Under the agreements, Gravelle received an upfront payment and became entitled to royalties, consulting compensation, and the possibility of future employment. Doc. No. 26-1; Doc. No. 26-2. Neither agreement refers to inducements akin to Sylvia's alleged sales forecast. Gravelle fails to plead fraudulent inducement against Jalove with particularity because the SAC insufficiently details the context and content of any alleged statements by Jalove to Gravelle. Even if the SAC pleaded the claim against Jalove with particularity, the same plausibility analysis would foreclose the claim as to Jalove. Finally, Gravelle does not allege fraudulent inducement by Hudson outside of any representations by Sylvia or Jalove.

Accordingly, the Court DISMISSES Count V.

E.  Breach of Implied in Fact or Oral Contract against Johnson

Count VI alleges that Johnson breached an implied-in-fact or oral agreement pursuant to which Johnson would provide "his custom user-interface proprietary software to operate [Gravelle's] key cutting machine(s)" in exchange for a $200-per-machine sales royalty. Doc. No. 34-1 at 28-31. "A contract implied in fact requires the same elements as an express contract and differs only in the method of expressing mutual assent." Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005) (internal quotation omitted). Even assuming that Gravelle and Johnson formed either an oral or implied-in-fact agreement, Gravelle has not plausibly alleged that Johnson breached that agreement at the time that he ceased business with Gravelle. For instance, the SAC does not assert any terms related to the

duration of their agreement, the number of key cutting machines for which Johnson would provide software, or any termination rights that either party retained. In any event, as Gravelle resides in Canada and as Johnson is a resident of Illinois, the Court lacks personal jurisdiction over Johnson. Thus, the Court ALLOWS Defendants' motion to dismiss Count VI.

      F.      <u>Intentional Infliction of Emotional Distress</u>

Count VII alleges that Sylvia and Jalove intentionally inflicted emotional distress upon Gravelle. The SAC offers no facts in relation to this claim and does not plausibly allege any "extreme and outrageous" conduct on the part of Sylvia or Jalove. <u>Roman v. Trs. Of Tufts College</u>, 461 Mass. 707, 717-18 (2012). Count VII is DISMISSED.

      G.      <u>Claims for Punitive Damages</u>

In Counts VIII, IX, and X, Gravelle seeks punitive damages against Hudson, HPC, Sylvia, and Jalove. Punitive damages are not allowed in Massachusetts except under statutory authority. Santana v. Registrars of Voters of Worcester, 398 Mass. 862, 867 (1986). The SAC cites no such statutory authority. Therefore, the Court DISMISSES Counts VIII, IX, and X.

      H.      <u>Chapter 93A</u>

Count XI alleges that Hudson, HPC, and Waveland engaged in unfair or deceptive acts or practices in violation of Chapter 93A. Gravelle presents only threadbare recitation of the elements of a Chapter 93A claim and fails to allege any specific acts or practices by any of these parties. Further, Gravelle does not allege plausibly that Hudson is a "mere instrumentality" of Waveland such that the Court should disregard Hudson's separate entity status and impute liability to Waveland for alleged tortious conduct by Hudson. See <u>Dorn v. Astra U.S., Inc.</u>, 1997 WL 258491 (D. Mass. April 2, 1997). The Court therefore ALLOWS Defendants' Motion to Dismiss as to Count XI.

I. Breach of the APA and the Purchase Order

Count XIII alleges that Hudson and Waveland breached the APA. Because neither Hudson nor Waveland was a party to that agreement, the Court DISMISSES Count XIII.

Count XIV asserts that Hudson and Waveland breached the Purchase Order. Waveland was not a party to the Purchase Order. With respect to Hudson, the subsequently-executed APA contained an integration clause that provided that the APA superseded "all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter." Doc. No. 26-1 ¶ 7.04. The APA thus extinguished any claims arising under the Purchase Order. Count XIV is DISMISSED accordingly.

III. CONCLUSION

For the foregoing reasons, the Court DISMISSES all counts in the SAC, with the exception of Gravelle's claim for breach of the Release by Hudson (Count XII). Gravelle's motion for leave to file the SAC (Doc. No. 34) is ALLOWED, and his motion to amend the SAC (Doc. No. 37) is DENIED. Defendants' Motion to Dismiss (Doc. No. 25) is ALLOWED in part and DENIED in part. Because the SAC alleges no counts against Calian, the Court also STRIKES Calian from the SAC. The Clerk shall schedule a Rule 16 conference. *Pro se* Plaintiff Gravelle shall understand all obligations of counsel set forth in Local Rule 16.1 to apply equally to him in this case.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge